| | |
|---|---|
| VERNON LEE, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| V. | ) Case No. |
| | ) |
| DENIS McDONOUGH, Secretary | ) |
| UNITED STATES DEPARTMENT OF | ) |
| VETERANS AFFAIRS, | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
|     Defendants. | ) |

## COMPLAINT AND JURY DEMAND

COMES NOW Plaintiff, Vernon Lee, by and through his undersigned counsel, and files this Complaint for damages for his causes of action against Defendant the United States Department of Veterans Affairs. Plaintiff alleges as follows:

## JURISDICTION AND VENUE

1. This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq*.

2. As this Complaint asserts federal causes of action arising under the laws of the United States, jurisdiction is appropriate pursuant to 28 U.S.C. § 1331.

3. Plaintiff was employed by the Defendant in Kansas City, Missouri. Pursuant to 28 U.S.C. § 139, venue properly lies in this judicial district in that the alleged unlawful employment practices were committed within the jurisdiction of the United States District Court for the Western District of Missouri, specifically in Kansas City, Missouri, and the Defendant is a government employer that is subject to the jurisdiction of this Court.

## PARTIES

4. Plaintiff, Vernon Lee, is a United States citizen. He resides in Kansas City, Jackson County, Missouri.

5. Plaintiff is an African American male who has participated in protected activity.

6. Defendant McDonough, in his capacity as Secretary of the VA, is located in Washington, D.C.

7. The United States of America and its Agency, United States Department of Veterans Affairs, Kansas City Veterans Administration Hospital (hereafter "KCVA") is located at 4801 Linwood Blvd., Kansas City, Missouri.

## ADMINISTRATIVE PROCEDURES
## CASE NO. 200J-VI15-2021102977

8. After initiating an informal administrative complaint on March 26, 2021, Plaintiff timely filed his formal complaint on May 6, 2021. That administrative Complaint of Discrimination was assigned Case No. 200J-VI15-2021102977.

9. Plaintiff's administrative Complaints of Discrimination alleged that he was discriminated against on the basis of his race, age, sex, disability, color, reprisal, and retaliation because of prior protected activity.

10. Plaintiff's administrative Complaint of Discrimination also alleged that he was victim of continued harassment, discrimination, and retaliation since filing a prior complaint of discrimination against the KCVA.

11. Plaintiff also alleged that other individuals with less experience, education, and qualifications were chosen over him as a result of discrimination and retaliation for filing an EEOC complaint.

2

12. Plaintiff has exhausted all administrative remedies for this claim in that on January 10, 2022, Defendant issued its Final Agency Decision on Plaintiff's claims.

13. The Final Administrative Decision was received by Plaintiff's counsel on January 10, 2022.

14. Plaintiff timely filed this lawsuit within 30 days of the receipt of the Final Agency Decision.

15. ORM (Office of Resolution Management) summarily dismissed his complaints without investigation."

16.

17. All of Plaintiff's claims alleged in this Complaint were considered during the administrative investigation of his administrative Complaints of Discrimination and they reasonably followed from the allegations contained in the administrative complaints of discrimination, reprisal, and retaliation.

18. Pursuant to 42 U.S.C. § 2000e-16(c), Plaintiff therefore invokes his right to bring this civil action in that he has satisfied all administrative and judicial prerequisites to the institution of this action.

**ALLEGATIONS COMMON TO ALL COUNTS**

19. Plaintiff is an African American male.

20. Plaintiff worked at the KCVA for 29 years and 6 months. He was originally hired on August 26, 1992 as a rehabilitation technician. He was then promoted to addiction therapist and finally to patient advocate which was a position he held for 3 years and 5 months before being constructively terminated by the KCVA.

21. At the time he was constructively terminated, he had been assigned to the Quality, Service, Value Line of the KCVA as a GS 1, Patient Representative.

22. At the Quality, Service, Value Line, Plaintiff's first line supervisor was Paula Hoffman, Supervisory Veteran Experience Office (VEO).

23. His second line supervisor was Eddaliss Gonzalez.

24. On November 10, 2020, Mr. Lee filed an EEOC complaint against the KCVA alleging discrimination and harassment based on race, age, disability, sex, and color, File Number 200J-0589-2020105593.

25. In this complaint, Mr. Lee also alleged that he had been subjected to ongoing harassment, disparate treatment and retaliation for complaints he made about racial discrimination.

26. Mr. Lee was subjected to ongoing harassment based upon his race by his supervisors, Wyatt Merriwether, Edaliss Gonzalez, and backup supervisor Denise Drummond.

27. Mr. Merriwether would not promote any of the Patient Representatives who are people of color, instead choosing Caucasian applicants with less experience and who were less qualified.

28. Mr. Merriwether took away job duties from the patient representatives, including Mr. Lee. When those duties were not performed satisfactorily, he routinely blamed the African American patient representatives, and bad mouthed them to the other supervisors.

29. Mr. Meriwether did not allow the patient representatives of color to engage in training on the new patient tracking system while he limited those mandated and who were under his supervision to have sufficient access to properly perform their duties. As a result, he undercut the patient representatives' job performance, including Mr. Lee's, because of the lack of training in this critical system.

30. Merriwether did not provide the patient representatives of color with appropriate PPE. These representatives were in an office adjacent to and in direct contact with the ancillary

4

COVID screening area. When minority patient representatives requested PPE and appropriate protocols for safety, he would not commit to them.

31. On March 18, 2020, Mr. Merriwether wrongfully denied Mr. Lee the use of his available leave.

32. Mr. Lee sought to use his available leave at this time, which was the height of the pandemic, because he the KCVA failed to provide him appropriate PPE and Mr. Merriwether threatened Mr. Lee with AWOL.

33. Charging employees who raise discrimination complaints with AWOL is a common tactic at the KCVA.

34. On March 20, 2020, Mr. Merriwether charged Mr. Lee with being AWOL.

35. Mr. Lee had worked for the KCVA for almost 30 years and had never once been charged with AWOL up until this point.

36. For over 8 months after that incident, the KCVA still failed to provide Mr. Lee with essential Personal Protective Equipment.

37. Since they could not provide him with essential PPE, Mr. Lee asked to be relocated to alternative workspace away from the COVID patients as a reasonable accommodation.

38. He request was flat out denied.

39. Mr. Merriwether also refused to allow Mr. Lee to have direct contact with Jackie Bifford, a fellow African American employee and the trainer for the new tracking system. This prevented Mr. Lee and the other representatives of color from having access to or learning the new system in an appropriate and streamlined manner.

40. Mr. Merriwether did this in an attempt to undercut the minority patient representatives', including Mr. Lee's, ability to perform their jobs.

5

41. Mr. Merriwether also required the patient representatives to engage in institutional disclosures that appeared directed at one particular doctor of color as a form of harassing that doctor and placing them in an uncomfortable and untenable situation.

42. Mr. Merriwether treated Mr. Lee and other black employees with attitudes ranging from indifference to degrading and humiliating.

43. Mr. Merriwether sent emails to Mr. Lee and other black employees that were demeaning and inappropriate.

44. During one meeting, Mr. Lee witnessed Mr. Merriwether humiliate a black employee in front of the entire group by talking over her, becoming loud and argumentative. She was so humiliated she had to leave the meeting.

45. Mr. Lee felt degraded by that incident which was clearly racial harassment.

46. Mr. Merriwether was Mr. Lee's supervisor at the time that Mr. Lee was non-selected for the supervisory position in approximately July 30, 2020. Despite being imminently qualified, Mr. Lee was non-selected for the supervisory position based on race, age, disability, and color.

47. Denise Drummond was the backup supervisor at times that Wyatt Merriwether was away. She treated the African American representatives as if they did not exist. She-did not acknowledge the minority patient representatives or engage with them in any meaningful way although she was supportive of the Caucasian workers.

48. Ms. Drummond engaged in tokenism with Mr. Lee as well. On one occasion, she invited Mr. Lee to interview candidates for a position with her. One candidate who was outstanding and also happened to be black. Mr. Lee rated him the highest due to his education and experience

which outpaced the other candidates dramatically. Ms. Drummond did not consult with Mr. Lee, and instead hired a lesser qualified Caucasian for the position.

49. It became clear that Mr. Lee was on the panel solely for the sake of appearing diverse.

50. When Ms. Drummond acted as Mr. Lee's supervisor, she would not respond to Mr. Lee and she would not respond to the veterans Mr. Lee represented.

51. Mr. Lee's original complaint also alleged racism and discrimination against Stanley Utley.

52. Mr. Lee's wife worked under Mr. Utley and Mr. Utley was also in Mr. Lee's supervisory chain.

53. Mr. Lee's wife complained of discrimination by him. She was involved in an EEO case by a doctor and testified in that matter.

54. After that testimony, Mr. Utley began to discriminate against both of them because Mr. Lee stood up for his own wife. Mr. Utley threatened to terminate her before she got her fifteen years of service in.

55. Mr. Lee's original complaint also alleged various acts of discrimination and harassment against Eddaliss Gonzales. Ms. Gonzalez was detailed to the QSV Service Chief Role for only a short period of time beginning June 2020.

56. Ms. Gonzalez made the selection for a detailed supervisory position in the patient advocate area. The selection, Ms. Ashley Colston, had no experience as a patient representative and did not have the same qualification and experience as the black employees who applied.

57. Ms. Gonzalez explained that she used a "grid," but she had never met the minority patient representatives, did not interview the minority patient representatives, and did not provide

7

Case 4:22-cv-00088-GAF   Document 1   Filed 02/09/22   Page 7 of 20

the minority patient representatives the opportunity to provide any information about their job duties.

58. After being selected, Ms. Colston evidenced her lack of knowledge, requiring the patient representatives to train her on critical tasks. She also began pushing work to the minority patient representatives that are within the job description of her supervisory position as well as tasks that are a direct violation of the Patient Advocate/ Representative mandate.

59. Ms. Colston was nevertheless supported in her actions by Ms. Gonzalez.

60. These acts adversely impacted minority patient representatives', including Mr. Lee's, ability to do their jobs and created a hostile work environment.

61. Additional disparate treatment was alleged in Mr. Lee's original complaint.

62. Specifically, on or about July 31, 2020 Supervisors Merriwether and Gonzalez hired an individual with fewer qualifications than the African Americans, including Mr. Lee, who submitted applications for the detailed supervisor position.

63. After that hiring, Mr. Lee and his fellow African American patient representatives were required to train the newly selected supervisor in all areas of their mandate. They were required to take on duties that are GS12 - GS13 duties-but were not paid for those duties.

64. During the last three years and a half year of his employment, Mr. Lee was treated differently than similarly situated white employees. He was ignored, treated dismissively, denied training given to white employees, directed to not attend the required Quality monthly meetings refused appropriate PPE, threatened with AWOL for calling in after being refused appropriate PPE during the COVID pandemic, had job duties taken from away from him, but still held responsible for those duties, bad mouthed and humiliated in front of the rest of the staff and was forced to watch as Mr. Lee's supervisor degrade other black employees.

65. Mr. Lee's original complaint also accused KCVA of retaliation against him for engaging in protected activity.

66. On a continuing basis, Mr. Lee was denied training on the Patient Tracking System.

67. On a continuing basis, job duties were taken from Mr. Lee.

68. On a continuing basis, Mr. Lee was not afforded the opportunity for advancement to the grades of GS12 or GS13.3.

69. On July 31, 2020, he was not selected for detail as the Supervisory Program Manager for Quality though he was more qualified than the Caucasian applicant selected for the job.

70. On September 25, 2020, he was denied the opportunity to qualify for the position of Supervisor of Patient Advocates.

71. On and since September 25, 2020 until the time he was constructively terminated, he was required to do the duties of Supervisor of Patient Advocates without the commensurate title or pay (GS13).

72. On October 19, 2020, he was not afforded the opportunity to qualify for the position of Supervisory Patient Representative (GS13).

73. Mr. Lee was the subject of retaliation by upper management since Mr. Lee stood up for Mr. Lee's wife, who had been a witness in an EEO complaint.

74. Mr. Lee was denied leave and had it limited when Mr. Lee had "use it or lose it leave."

75. Mr. Lee also complained to his supervisors that patient complaints were being "lost" in order to make the numbers look better. Since that complaint, Mr. Lee was the subject of

demeaning and degrading comments, again threatened with AWOL, and not promoted or detailed to a supervisory position.

76. After filing his original EEOC complaint, Mr. Lee experienced further discrimination based on race, age, and color, and also experienced harassment in the form of reprisal and retaliation as a consequence of filing the EEOC complaint against his department.

77. After filing his initial EEO complaint, Mr. Lee was subjected to ongoing retaliation that caused significant exacerbation of his pre-existing PTSD.

78. On November 24, 2020, he received a "downgraded" performance evaluation.

79. On November 28, 2020, he was denied an opportunity to apply for the detail to act as Supervisor, Program Specialist, Quality Service Value (QSV).

80. Since filing the original complaint, Mr. Lee was placed under the direct supervision of the individual against whom the previous harassment complaint was filed. She then issued a lowered evaluation that prevented his receiving a performance award.

81. Eventually, that evaluation was changed but the section on which the harassing official was to comment was instead left blank, diminishing the prospects for upward mobility. As a result of his performance rating of Excellent - a ranking Mr. Lee traditionally have received while working at the VA - Mr. Lee was supposed to be given a performance award. That award was significantly delayed and not provided until Mr. Lee made another formal complaint.

82. Mr. Lee was performing the duties of a supervisory patient advocate although Mr. Lee had not been given that position.

83. On two occasions, Mr. Lee applied for that position and was passed over though he was qualified.

10

84. Both of those positions were posted at a GS-12 level for which Mr. Lee was eminently qualified. That position was posted again in approximately February 2021. It was posted at a GS-13 level, instead of the 12, disqualifying Mr. Lee from application.

85. Further, other individuals with less experience and education were actively recruited for the position. Finally, a white female with no experience was hired over Mr. Lee.

86. As noted above, at the time of his termination, Mr. Lee's first line supervisor was Paula Hoffman, Supervisory Veteran Experience Office (VEO) whose job Mr. Lee had applied for. Ms. Hoffman was hired over Mr. Lee despite him being abundantly more qualified for the position.

87. After she was hired, Ms. Hoffman contacted Mr. Lee and requested that Mr. Lee train her for the position.

88. The position of Supervisory VEO had been previously announced as a GS-12 position, which meant that Vernon Lee was qualified to apply for the position, which he did but was passed over.

89. At or about November 2020, the Supervisory VEO position was re-announced but this time as a GS-13 position.

90. Medical Center Director David Isaacks intentionally did this to disqualify Vernon Lee from applying for the position.

91. The agency confirmed that Mr. Isaacks selected Ms. Hoffman for the position over Mr. Lee.

92. After raising concerns of discrimination with the Agency, Mr. Lee was refused backup to allow Mr. Lee to have a lunch break or fifteen-minute breaks.

93. Additionally, Mr. Lee regularly worked with documents that contained identifiable patient information which were required to be shredded regularly. However, Mr. Lee was not provided a shred bin. In fact, it was refused to Mr. Lee.

94. As a result, Mr. Lee had to walk long distances to shred and/or take any breaks.

95. The area that was requested for breaks is less than forty yards from his office and has a shred bin.

96. Because of the distance to the break area and shredder and lack of backup for Mr. Lee, Mr. Lee often had to forgo his lunch times and breaks to accommodate his veterans.

97. Mr. Lee had not been given any support and was ostracized since the filing of the original EEO complaint.

98. Mr. Lee was not recognized for process improvement recognition despite the fact that Mr. Lee produced and implemented processes and improvements that were adopted by the KCVA.

99. Despite the environment rife with discriminatory animus, Mr. Lee was a good employee who always met the reasonable expectations of his employment until he was placed under Angela Frey as his supervisor.

100. In fact, during its investigation, the agency was unable to find any reports of performance deficiencies throughout his entire 29-year career.

101. Management has a pattern of treating black employees differently than white employees, and they have a pattern of retaliating against individuals who file EEO complaints.

102. Charging employees who raise discrimination complaints with AWOL is a common tactic at the KCVA.

103. Mr. Lee suffered mental and emotional stress, as well as a hindrance in his career during this process as he was made to perform duties well below his education and grade level.

104. Mr. Lee suffered from systemic racism.

105. Mr. Lee filed an EEO complaint, a protected activity, on November 10, 2020.

106. Following that, he was subjected to ongoing harassment from his supervisor including degrading comments, harassment, excess supervisory oversight, and a poor performance appraisal for the purpose of retaliating against him.

107. Mr. Lee was constructively discharged on February 16, 2021.

108. Mr. Lee would have remained in his position until February 2026, but it became impossible to manage the stress associated with the discrimination that was occurring.

109. At the time of his constructive termination, Plaintiff was fully meeting all expectations of the job.

110. Plaintiff had never been written up or received any discipline prior to his protected activity.

111. Plaintiff suffered harassment on the job based upon his race.

112. Once Plaintiff sought fair treatment for himself and his fellow Black employees, he was unfairly scrutinized, and the discrimination and harassment escalated eventually forcing him to retire early.

113. These kinds of harassment continued on a regular basis all the way up until Plaintiff retired.

## COUNT 1: RACE DISCRIMINATION AND SEX DISCRIMINATION
## DISPARATE TREATMENT

114. Plaintiff hereby incorporates by this reference each and every allegation found in the above paragraphs.

115. Plaintiff, an African American male, is a member of a protected class.

116. He was qualified for the position he held at the KCVA and met his employer's legitimate performance expectations.

117. Plaintiff suffered adverse job actions when management engaged in the actions including but not limited to:

    a. Constructively terminated Plaintiff from his employment following complaints of discrimination;

    b. Undermining his work so that he could not be successful;

    c. Refusing to provide Plaintiff with PPE;

    d. Refusing to allow Plaintiff to use accrued leave;

    e. Refusing to provide Plaintiff training necessary to perform his job;

    f. Forcing Plaintiff to provide functions required of higher rated employees without just compensation;

    g. Refusing to advance Plaintiff for positions he was qualified for;

    h. Intentionally changing promotion requirements to specifically preclude Plaintiff from applying;

    i. Made false allegations regarding Plaintiff's work and conduct;

    j. Gave Plaintiff a lowered performance appraisal;

    k. Disciplined Plaintiff for matters for which other similarly situated white employees were not disciplined;

a. Charging Plaintiff with AWOL when similarly situated Caucasian employees were not so charged;

l. And other actions as set forth in the statement of facts.

118. The Agency and Management Officials treated similarly situated Caucasian employees more favorably than they did Plaintiff.

119. As a direct and proximate result of the conduct of Defendants and the conduct of the supervisors and managers, Plaintiff suffered grievous injury and damage, including but not limited to past, present, and future lost wages, benefits, earnings and earning capacity, mental anguish, pain, humiliation, embarrassment, depression, anxiety, anger, physical manifestations of emotional distress and physical injury, and lost enjoyment of life.

**COUNT 2 HOSTILE ENVIRONMENT BASED ON RACE, COLOR AND NATIONAL ORIGIN
ALL DEFENDANTS**

120. Plaintiff hereby incorporates by this reference each and every allegation found in the above paragraphs.

121. During the course of Plaintiff's employment with the Defendant, Plaintiff experienced a hostile environment based upon his race, color, and national origin in that:

a. Plaintiff was subjected to harassment;

b. The harassment was unwelcome;

c. The harassment was based upon Plaintiff's race;

d. The harassment was sufficiently severe or pervasive that a reasonable person in Plaintiff's position would find Plaintiff's work environment to be hostile or abusive;

e. At the time the harassment occurred and as a result of it, Plaintiff believed the work environment to be hostile or abusive;

f.  Defendants knew or should have known of the harassment; and

g.  Defendants failed to take prompt, appropriate corrective action to end the harassment.

122. As a direct and proximate result of the conduct of Defendants and the conduct of the supervisors and managers, Plaintiff suffered grievous injury and damage, including but not limited to past, present, and future lost wages, benefits, earnings and earning capacity, mental anguish, pain, humiliation, embarrassment, depression, anxiety, anger, physical manifestations of emotional distress and physical injury, and lost enjoyment of life.

## COUNT 3: RETALIATION
## ALL DEFENDANTS

123. Plaintiff hereby incorporates by this reference each and every allegation found in the above paragraphs .

124. Plaintiff complained to Defendants his concerns that he was being discriminated against directly and through his EEO informal counseling that occurred in or about May 10, 2021 as well as his later formal complaint.

125. Plaintiff reasonably believed that he was being harassed and/or discriminated against on the basis of race, color, disability, and sex or age.

126. Defendant engaged in adverse actions against the Plaintiff including but not limited to the following actions:

a. Constructively terminated Plaintiff from his employment following complaints of discrimination;

b. Undermining his work so that he could not be successful;

c. Refusing to provide Plaintiff with PPE;

d. Refusing to allow Plaintiff to use accrued leave;

16

e. Refusing to provide Plaintiff training necessary to perform his job;

f. Forcing Plaintiff to provide functions required of higher rated employees without just compensation;

g. Refusing to advance Plaintiff for positions he was qualified for;

h. Intentionally changing promotion requirements to specifically preclude Plaintiff from applying;

i. Made false allegations regarding Plaintiff's work and conduct;

j. Gave Plaintiff a lowered performance appraisal;

k. Disciplined Plaintiff for matters for which other similarly situated white employees were not disciplined;

l. Charging Plaintiff with AWOL when similarly situated Caucasian employees were not so charged;

m.

n. And other actions as set forth in the statement of facts.

127. Plaintiff's complaints of racial harassment and/or discrimination were contributing and/or motivating factors in the adverse actions taken against Plaintiff.

128. Once plaintiff requested the he and his Black colleagues be treated the same as Caucasian employees, he was retaliated against by:

   a. Constructively terminated Plaintiff from his employment following complaints of discrimination;

   b. Undermining his work so that he could not be successful;

   c. Refusing to provide Plaintiff with PPE;

   d. Refusing to allow Plaintiff to use accrued leave;

17

e. Refusing to provide Plaintiff training necessary to perform his job;

f. Forcing Plaintiff to provide functions required of higher rated employees without just compensation;

g. Refusing to advance Plaintiff for positions he was qualified for;

h. Intentionally changing promotion requirements to specifically preclude Plaintiff from applying;

i. Made false allegations regarding Plaintiff's work and conduct;

j. Gave Plaintiff a lowered performance appraisal;

k. Disciplined Plaintiff for matters for which other similarly situated white employees were not disciplined;

a. Charging Plaintiff with AWOL when similarly situated Caucasian employees were not so charged;

l. And other actions as set forth in the statement of facts.

129. As a direct and proximate result of the conduct of Defendants and the conduct of the supervisors and managers, Plaintiff suffered grievous injury and damage, including but not limited to past, present, and future lost wages, benefits, earnings and earning capacity, mental anguish, pain, humiliation, embarrassment, depression, anxiety, anger, physical manifestations of emotional distress and physical injury, and lost enjoyment of life.

## COUNT 4: CONSTRUCTIVE DISCHARGE

130. Plaintiff hereby incorporates by this reference each and every allegation found in the above paragraphs.

131. Plaintiff was constructively discharged from his employment on or about February 16, 2021 because of his race, color and retaliation.

18

Case 4:22-cv-00088-GAF    Document 1    Filed 02/09/22    Page 18 of 20

132. As set forth in the Allegations Common to All Counts, the ongoing harassment and retaliation, coupled with the monitoring of other black employees and the accelerated disciplinary process to which Plaintiff was subjected, Plaintiff quit his position.

133. A reasonable employee in Plaintiff's position would have felt compelled to resign.

134. Defendant Agency intended to force plaintiff to resign and created intolerable working conditions that caused it to happen.

As a direct and proximate result of the conduct of Defendants and the conduct of the supervisors and managers, Plaintiff suffered grievous injury and damage, including but not limited to past, present and future lost wages, benefits, earnings and earning capacity, mental anguish, pain, humiliation, embarrassment, depression, anxiety, anger, physical manifestations of emotional distress and physical injury and lost enjoyment of life.

WHEREFORE, Plaintiff respectfully prays that this Court:

1. Issue judgment against the Defendants for all the damages that Plaintiff has incurred, including without limitation, physical and personal injury, emotional distress, back pay, future pay, lost earnings, lost earning capacity, special damages, and all compensatory damages to which the Plaintiff is entitled;

2. Issue judgment against the defendants, or any defendant, for punitive and/or statutory damages to which the plaintiff may be entitled to due to the defendants' intentional violation of plaintiff's rights;

3. Award Plaintiff his reasonable attorneys' fees, costs, and expenses;

4. Award to Plaintiff any and all such further relief as may be equitable and just.

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Respectfully submitted,

HUMPHREY, FARRINGTON, & McCLAIN, P.C.


*/S/ Daniel A. Thomas*

| | |
|---|---|
| DANIEL A. THOMAS | #52030 |
| MICHAEL S. KILGORE | #44149 |
| CHELSEA M. PIERCE | #61471 |
| MARGARET A. GOODMAN | #58329 |

221 W. Lexington, Suite 400
Independence, Missouri 64050
Telephone: (816) 836-5050
Facsimile: (816) 836-8966
dat@hfmlegal.com
msk@hfmlegal.com
cmp@hfmlegal.com
mag@hfmlegal.com

and

REBECCA M. RANDLES           MO #40149
**RANDLES MATA, LLC**
851 NW 45th Street
Suite 310
Kansas City, Missouri 64116
(816) 931-9901
(816) 931-0134 (FAX)
rebecca@randlesmatalaw.com

**ATTORNEYS FOR PLAINTIFF**